79.300-02

Date: March 17, 2015

Kathy Clifton, District Clerk

411th Judicial District Court

Polk County Courthouse

101 W. Mill St. Ste. 216

Livingston, Texas 77351

Re: Request for file mark Movant's Pro-Se Motion for Judicial Notice

Style: Del Ray Sanders   vs.   The State of Texas
      (Movant)                (Respondent)

Cause No. 20,597

Dear Ms. Clifton, Clerk

   Please find enclosed for filing Movant's Pro-Se Motion for Judicial Notice Whereas Movant Sanders' is respectfully requesting for said motion to be filed with the 411th Judicial District Court of Polk County-- Livingston, Texas.

   In addition, Ms. Clifton Movant respectfully request for your office to provide the Polk County Criminal District Attorney Mr. William Lee Hon a file-mark copy of said motion.

Sincerely,

Del Ray Sanders, #1621331

Wynne Unit

810 FM 2821

Huntsville, Texas

77349

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 25 2015

Abel Acosta, Clerk

Thank-You, in advance for your time and assistance with this matter.

I.

(LET. TO CLK. REQUEST FOR FILE MARK)

Long before trial : Perhaps even a year before the trial actually began.
Mr. Sanders' initial sheriffs report given to arriving officers and during
sheriffs interrogation at the sheriff's office after leaving hospital, to
Inspector Craig Finnegan and Texas Ranger Ron Duff.

Upon arriving home from work and awaking his wife to let him into the
house, due to him not being able to get in, seeing his wife run thru house
"accelerated speed" and slipping on loose tile and falling head first onto
floor, bouncing nearly back to her feet and then unconciously ending up on
her side on the floor. Once inside after gaining entry hum self while Mrs.
Sanders lay out cold on the floor Mr. Sanders notices what appears to be blood
around nasal passages, (dried blood). Hair appeared to be burnt off on one
side of head, fingers and lips also appear to have been burned, also Mrs.
Sanders front two teeth appear to be chipped.

Mr. Sanders, in his mind after years of dealing with wife's abuse of drugs
knew what was going on. (Loose tile by door was photographed). Mr. Sanders
began to cry. He immediately called wife's mother Mrs. Rhodes, since his wife
was at her residence visiting the day before and asked Mrs. Rhodes, "Where
did she get (wife) the drugs that she's passed out on the floor again. Mrs.
Rhodes stated, "Just put her in bed like you always do. Let her sleep it off,
she will be alright when she wakes up."

All this and everything else Mr. Sanders swears to is in reporter's records,
transcribed during his trial. Almost a year later to the initial sheriff's
interogation and subsequently Mr. Sanders arrest.

The hair found in different locations of the house and in the back of
Mr. Sanders truck was sent to the Texas Department of Public Safety's crime
lab in Houston to be tested. (DNA), is what we are discussing here and the
availability of the test results at the time of trial of the hair sample col-
lected from the scene and hair taken at or during the autopsy.

Mr. Sanders was arrested during the month of February 2009. Trial began
in or around February 2010, one year later. No results from hair samples were
present for trial. When asked where hair samples were by the prosecutor, Lee
Hon and Mr. Sanders Attorney James Keagen. "Merrill Hines", the medical examiner
who did the autopsy and Valerie Huebner the forensic scientist for the Texas

1-OF-6

Department of Public Safety's crime lab Houston and Mr. McWhorter, manager of the DNA section of the Texas Department of Public Safety's crime lab Houston stated, "we do not have those results with us today." And don't even know if test were completed one year later.

The results from the hair being tested would have proved who's hair was in the back of my truck and also if samples were of burnt hair or hair Lee Hon states and Merrill Hines also states at trial were pulled from the victim's head during a struggle. But as to date one year after being sent to crime lab no resilts from test at time of trial.

My question is, where are the samples today? What were the test results? Would the results have proved Mr. Sanders statement, "his wifes hair was burnt along with her lips, fingers and the beds matress," or would it have proved otherwise?

* FACT

The "State", Texas Department of Public Safety's crime lab, and/or the prosecutor withheld exculpatory evidence. Evidence favorable to the accused by not readying or providing the defendant's lawyer the result's (DNA) from hair samples taken from his wife's body and the scene to enable defendant to prove his side of story and present evidence to the jury.

* FACT

Hair was burnt not pulled out.

Hair samples should still be available for testing if crime lab didn't destroy them. Results of testing should at least be documented in the archives.

Did court 411 actually receive test results performed on collected hair during or after trial? Who's hair were they actually testing, was it the deceased?

Will this be a newly discovered evidence claim? Evidence not available at the time of trial and not known to the defendant, nor the court or the defendant's Attorney James Keegan.

Also, chain of custody is in question concerning the hair sampling. Who

2-of-u

took hair samples from scene ? who took hair samples from body? Who tested hair samples, if tested? Who delivered the test results and to whom the test results delivered? What was the date of test results, delivery date, if tests were done? "Where if any are test results?"

Vol 5, page 37, lines 8-15.
Direct examination of Andrew McWhorter, employed by the DNA section of the Texas Department of Public Safety's crime lab Houston.

"Remember", Hon states. "Victim's hair was pulled out, I testified her hair was burnt and when I combed it, it started falling out in brush."

Line 8. (Hon questioning McWhorter) One question came up yesterday, I think during one of your cohorts testimony as to why the hair specimens had not been tested to date. Are you aware of that?

Line 11 (McWhorter replies) Yeah, I know they have not been tested.

Vol 4 page 162, lines 8-20

(Questioning of Valerie Huebner), Forensic scientist, Texas Department of Public Safety's crime lab Houston.

Lines 15-16. (Huebner) I did not test hairs from the scalp of victim.

Line 17. (Question by Hon). Let me ask you this. Why would the hair samples not have been tested?

Line 19. (Huebner answers) That's trace evidence, it was forwarded to trace, but it hadn't been completed by this time. (trial time).

Vol 3 page 36, line 10.
Bo noticed burns on her lips and fingers.

Line 7. He noticed bruises all over victim.

These were things noted in transcripts noted by volume lines, and page numbers defendant noticed upon arriving home from work and finding victim on the floor. Also dried blood around her nose and chipped front teeth all were noticed when I picked her off the floor the minute I arrived home from work and found her.

-3-

3-OK-U

Vol 3, page 259, lines 10-14.

(Question to Detective Allen by Keegan). Ma'am, did you save hair samples that were found in truck?

(Answer by Detective Allen) It went to the DPS crime lab.

(Question by Keegan) Do you have the results here today?

(Answer by Allen) I do not.

NOTE: Bo is the defendant

4-OF-6

Office of the Medical Examiner of Harris County

Joseph A. Jachimczyk Forensic Center

1885 Old Spanish Trail

Houston, Texas 77054-2098

Trial began on or about January 11,13 or 14th., 2010.

February 16,17,2009. Crime scene investigators arrive at the scene.

Dr. Merrill Hines did autopsy.

I believe autopsy was completed on February 27th.,2009. And turned over to the DPS crime lab then on that date.

Andrew McWhorter - DNA Section manager - Texas Department of Public Safety Crime Lab Houston.

Arrived at crime scene with Tanya Dean and Valerie Huebner on February 16th., 2009. Andrew collected hair samples from scene.

Vol 5, page 25, line 14. Andrew states, "we generally collect hair samples."

Vol 5, pages 25-26, line 24-3 on page 26. Andrew states, "they package the samples (DNA) and took them to their office in Houston on February 17th.,2009. On February 27th.,2009. Several specimens were received from the medical examiners office.

Vol 5, page 37, lines 8-13. Questions about hair samples not being tested to date. (McWhorter): "I know they haven't been tested", states on line 11, Vol 5, page 37.

Vol 5, page 122, lines 12-13. "I saw her hair gone and burnt up."

Vol 5, page 200, lines 12-13. "That's when I noticed a big burn hole in matress."

Note: Vol 4, page 33, lines 4-8. (Merrill Hines), states: He did not document on his diagrams areas of hair loss on the scalp.

Vol 4, page 60, lines 5-6. "I suppose if somebody fell while being held by their hair that could explain hair loss, also and would explain scalp injuries."

Those in attendance at crime scene taking DNA samples and specimens were, Pamela Mikulcik - Andrew McWhorter, and Valerie Huebner, also Tonya Dean.

Vol 4, page 168, lines 4-8. No traces of blood found on hair samples taken from truck. Once again hair was not pulled out, hair was burnt from her catching bed on fire and burning lips and fingers.

Vol 4, page 169, lines 18-25. Hair samples from hole in wall were not tested, but were forwarded along with other hair samples to the Trace Department of TDPS crime lab Houston.

Vol 3, page 259, lines 10-14. "Ma'am do you have the results from crime lab on hair samples here today?"

"They went to crime lab DPS."

"Do you have the results here today?"

"I do not."

Although this information about hair samples not being available as DNA evidence at trial was brought up during trial.

The results (New Discovered Evidence) were not available during trial. Making this newly discovered DNA evidence.

And last of all to prove Sanders truthfullness, was hair pulled or burnt? Also who's hair is actually being tested? Where's results from lab? Why weren't results offered up in court?

Withholding, Suppressing Exculpatory Evidence.

6-of-6

No. 20,597

| | | |
|---|---|---|
| Del Ray Sanders (Movant) | § | In The 411th. Judicial |
| vs. | § | District Court of |
| The State of Texas (Respondent) | § | Polk County, Texas |
| | § | |

Abel Acosta, Clerk

MAR 25 2015

RECEIVED IN
COURT OF CRIMINAL APPEALS

## MOTION FOR JUDICIAL NOTICE

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW, Del Ray Sanders, T.D.C.J. - ID No. 1621331 Movant Pro-Se here-an-after, in the above titled style and cause, and moves this Honorable Court to take judicial notice of certain adjudicative facts; and in support thereof would show the Honorable Court as follows:

### I.

Tex. R. Evid. Rule 201 provides that a trial court may take judicial notice of adjudicative facts. The rule further provides that judicial notice is mandatory when requested by a party and when the trial court is supplied with the necessary information. Whereas, adjudicative facts are the facts of this instant case. O'Connell v. State, 17 S.W.3d 746(Tex.App.-Austin 2000,no pet).

### II.

In this case, Movant Sanders' request that the Honorable Court take judicial notice that On or about the 16 day of February 2015 Applicant's Motion For DNA Testing Of Unused Evidence Containing DNA-- said motion was sent with a request for file mark, to the 411th. District Clerk Kathy Clifton. It is within the premises of said motion-- that the court will find the necessary information for the taking of judicial notice.

### III.

Movant here-in, submits he has supplied the information necessary to the taking of judicial notice as required by Rule 201(d) therein his Motion of February 16 as aforementioned above-- and hereby make adoption by reference Tex.R. App. P. 9.7 / Tex.R.Civ.P. 10(c) for any and all purposes.

-1-

2-of-7

## III. (Cont.

In addition, Rule 201(f) provides Judicial Notice may be taken at any stage to the proceedings-- Federal Rules of Evidence Rule 201.

Movant submits the adjudicative facts-- in which he is requesting Notice are within the territorial jurisdiction of this Honorable Court and/or capable of accurate and ready determination by resorting to sources whose accuracy cannot be questioned, namely the colloquy of the official Court reporters records for cause. See: Applicant's file mark copy of February 16, 2015 Motion for DNA Testing of unused Evidence Containing DNA

Movant submits-- for the Honorable Court a summary of the adjudicative facts contained therein in which he is requesting judicial notice be taken as follows:

(1) Motion for DNA Testing of unused evidence containing DNA was file mark and presented to the Honorable 411th Judicial District Court on or about FEB 16, 2015

(2) "...the aforementioned Motion contains the facts necessary for the taking of judicial notice, also aforementioned herein."

(3) "...that adoption by reference has/is made herein for purposes of the Court to be provided with the necessary facts for the taking of judicial notice."

(4) A material issue of law and fact exist, in which DNA test results were not availiable at the point in time of the defendant's trial.

(5) Movant submits that the test results in regards to the DNA obtained are also as a material issue of law and fact, "Relevant Evidence" Rule 401 Fed.R. Evid.

(6) Defendant's jury as a sole trier of facts were deprived of such relevant evidence for considerations during guilt/innocense phase of the criminal trial.

(7) Defendant submits-- accordingly, cause and prejudice may be clearly demonstrated.

(8) And finally, newly discovered evidence-- it is undisputed would allow the applicant a subsequent writ of habeas corpus WHC (2) eliminating any whims from the state for subsequent writ abuse, pursuant to § 11.07 Sec. 4.

(9) Request for "Live Evidentiary Hearing", is/has been submitted in regards to these matters. In other words, herein also a "Live Evidentiary Hearing" is respectfully requested herein. Whereas without a hearing constitutes an arbitrary and unreasonable action. Ex Parte Williams, (App. 4th. dist. 1982) 630 S.W.2d 803. Also see: Thompson v. State, 9 S.W.3d 808(Tex.Crim.App. 1999).

3-OF-7

## III. (Cont.

WHEREFORE, PREMISES CONSIDERED, Movant Sanders' prays that this Motion be granted and the Honorable Court take judicial notice of the adjudicative facts requested.

Movant Sanders' Pro-Se Motion for Judicial Notice is hereby:

Respectfully submitted,

SIGNED &;

DATED ON THIS THE ⎡⎤ DAY OF March, 2015.

(Movant) Del Ray Sanders, #1621331

Wynne Unit

810 FM 2821

Huntsville, Texas

77349

-3-

4 OF 7

No. 20,597

| Del Ray Sanders (Movant) | § | In The 411th Judicial |
| vs. | § | District Court of |
| The State of Texas (Respondent) | § | Polk County, Texas |

## ORDER

On this the ___ day of _____ 201__ came to be heard the foregoing Motion for Judicial Notice.

Whereas, it is after review of the Movant's pleadings therein-- opposing arguments from the State, If Any ?

It appears to the Court that said Motion should be:

GRANTED          and/or          DENIED

_____

JUDGE PRESIDING

o 0 o

-4-

(Order)

S-OF-7

# UNSWORN DECLARATION UNDER PENALTY OF PERJURY
## (28 U.S.C. §1746) / (V.T.C.A. Civ. Prac. & Rem. Code §132.001 - 132.003)

I, Del Ray Sanders, #1621331 certify that I am currently incarcerated at the John M. Wynne Unit - T.D.C.J. -ID 810 FM 2821 Huntsville, TX 77349 located in Walker County, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

EXECUTED ON THIS THE 17 DAY OF March, 2015. _Del Ray Sanders_ Pro-Se

Del Ray Sanders, #1621331

Wynne Unit

810 FM 2821

Huntsville, Texas

77349

-5-

(UNSWORN DECLARATION)

# CERTIFICATE OF SERVICE

I, Del Ray Sanders, T.D.C.J. No. 1621331 certify that I have sent a true and correct copy of-- Movant's Pro-Se Motion for Judicial Notice via U.S. Mail Postage Pre-paid to the following parties:

David Maland, Clerk
U.S. District Court - Eastern Division
104 N. Third St
Lufkin, Texas 75901

Clerk, Carol Ann Flores
9th Dist. Court of Appeals
1001 Pearl Ste. 330
Beaumont, TX 77701

Movant,
Del Ray Sanders'
Wynne Unit

Abel Acosta, Clerk
Court of Criminal Appeals
P.O. Box 12308
Capitol Station
Austin, TX 78711

*Clerk, Kathy Clifton
411th Judicial District Court
Polk County Courthouse
101 W. Mill St. Ste. 216
Livingston, TX 77351

* Criminal District Attorney
file mark service-- requested
to be provided by the office
of the District Clerk
To: [William Lee Hon' Crim. Dist.Atty.]

DATED ON THIS THE ☐ DAY OF March, 2015.

_Del Ray Sanders_ Pro-Se

Del Ray Sanders, #1621331

Wynne Unit

810 FM 2821

Huntsville, TX 77349

C. U.S. Dist. Ct. Clk. Maland'
C. (CCA) Clk. Acosta'
C. 9th (COA) Clk. Flores'
C. 411th Dist. Clk. Clifton *Crim. Dist. Atty. Hon'
C. Movant Sanders'           service requested
[Enclosures as Stated]

-6-

(Cert. of Serv.)

| | | |
|---|---|---|
| Del Ray Sanders | § | In The 411th Judicial |
| V. | § | District Court at |
| The State of Texas | § | Polk County, Texas |

## APPLICANT'S MOTION FOR DNA TESTING OF

## UNUSED EVIDENCE CONTAINING DNA

TO THE HONORABLE COURT:

COMES NOW, Del Ray Sanders, hereafter referred to as Applicant in the above styled and numbered cause in which he now presents pursuant to Tex. Code Crim. Proc. Art. 64.01 (a)(1)(B). In Support, Applicant will show just cause as to why his Motion should be granted.

## SUMMARY OF THE CASE

Applicant was charged with the felony offense of Murder in the first degree, which was alleged to have taken place specifically on February 16th., 2009.

It would be in the same month of February 2009 that Applicant would be placed in detention.

Applicant was finally indicted for the felony offense of Murder in the first degree.

James Keegan of Belaire, Texas was appointed as counsel for the Applicant, and trial began on or about January 2010.

Applicant elected to be tried by a jury on his plea of not guilty. A jury was selected and the cause was tried in which Applicant was found to be guilty.

Applicant elected to have the same jury to determine his punishment in which he was subsequently sentenced to life in State prison.

Although there were post-conviction appeals Applicant has not prevailed.

Applicant will assert that he has never filed any Motions for DNA testing of head hair and hair samples collected from various areas around the accident scene, nor head hair samples taken during the autopsy of the victim, the deceased, the Applicant's wife.

During his initial statement to arriving officers and in interrogations by Inspector Craig Finnegan and Texas Ranger Ron Duff at the Polk County sheriffs office, Applicant stated that upon arriving home from work on February 16, 2009, he awoke his wife the deceased from sleeping to let him into the house where they lived because the door was stuck and could not be opened from the outside at the time, his wife got up and began to run thru the house at accelerated speed to come open the door, in doing so she slipped on a loose tile and fell hitting her head on the floor and bouncing up she landed again on the floor on her side, at which point she became unconcious, once gaining entry into the house by forcing the door open and going to Mrs. Sanders' aid where she lay unconcious on the floor Mr. Sanders noticed what appeared to be dried blood around the nasal passages, he also noticed that head hair on one side of her head had been burnt off and her fingers and lips also appeared to have been burned. Applicant also noticed that two of Mrs. Sanders' front teeth appeared to be chipped.

Because of their continual drug abuse and their many years of their usage together, his wife's passing out was a normal occurrance and at this time the Applicant believed that this was just one of those such instances.

Applicant immediately called his wife's mother Mrs. Rhodes to inform her that her daughter had fallen and passed out on the floor again and to ask where had she gotten the drugs since she had spent the day before with her, Ms. Rhodes only instructed the Applicant to just put his wife to bed and let her sleep it off, that she would be alright when she woke up.

-2-

2-OF-10

Hair was found in different locations of the house and in the back of the Applicant's truck by crime scene investigators and taken to the Texas Department of Public Safety's crime lab in Harris County, Texas to be tested. These hair samples, their testing and their results are what is in question, and the basis of this Motion.

These hair samples were taken from the accident scene and hair samples were also taken during the autopsy that was performed on the deceased.

At the time of Applicant's Jury Trial, almost one year later, January 2010, the results of the testing of the hair samples were not available to the defense or to be presented at trial. Because Applicant asserted that the deceases hair appeared to be burned, and the prosecution alleged that the hair had been pulled out, the testing of the hair samples were a significant part of the Applicant's defense were we better know there is a fire whence we see much smoke rising than we could know it by one or two witnesses swearing to it. The witnesses may commit perjury but the smoke cannot.

Applicant's motion for post-conviction DNA testing pursuant to Texas Code of Criminal Proc. Art. 64.01(a)(1)(B), under this provision of this statute, Applicant should be entitled to post-conviction testing.

Under the provisions set out in chapter 64, or article 64, this Motion constitutes a sworn affidavit / declaration that challenges the prior responses of the State Official which established the official chain of custody of the material evidence collected but not available at the time of Applicant's Jury Trial.

When questioned as to the hair samples by the Polk County Asst. Prosecutor Lee Hon, and Applicant's Attorney James Keegan, Merrill Hines, the Polk County Medical Examiner which performed the autopsy of the deceased Ms. Sanders, and took head hair samples....Valerie Huebner the forensic scientist for the Texas Department of Public Safety's crime lab in Houston which did DNA testing

of other evidence taken from the accident scene and Mr. McWhorter, Manager of the DNA Section of the Texas Department of Public Safety's crime lab in Harris County stated "we do not have those results with us today" and could not testify as to whether testing had been complete some one year later. The testing of the hair samples and their results would have given conclusive evidence as to who's hair was found in the back of the Applicant's truck and also would have proven for or against the State's theory as to whether the deceases hair had been pulled out during a struggle or the defenses theory that the hair appeared to have been burned out upon Applicant's observation of his wife when he returned home from work.

It is the Applicant's belief that at the time the hair samples were taken, they were tested and failed to prove the assumptions of the prosecutor Lee Hon, and Merrill Hines of the Polk County medical examiners office and thus prove the statements given by the Applicant that upon arriving home from work, when he observed his wife unconcious and lying on the floor he noticed that her hair appeared to be burnt along with her fingers, lips, and a bed matress which was also burnt.

Applicant believes that the Polk County Prosecutors office and/or the Texas Department of Public Safety's crime lab Harris County conspired to withhold this exculpatory evidence, evidence that once existed and may still exist that is favorable to the Applicant and may hold the potential to exonerate him, Applicant feels that he was denied due process and equal protection of the law in violation of Brady v. Maryland, 373 U.S. 83; Kyles v. Whitely, 514 U.S. 419, 115 S.CT. 1555; Arizona v. Youngblood, 488 U.S. 151, 109 S.CT. 333; California v. Trombetta, 467 U.S. 479; U.S.C.A. Const. Amends. 5,6,14, and therefore, was denied a full and fair Jury Trial because the jury which convicted the Applicant was denied the opportunity to consider this exculpatory material evidence, favorable evidence that was not disclosed to the defendant

4 of 10

that would have made a different result "reasonable probable" in the Applicant Murder prosecution and thus nondisclosure of the evidence was Brady violation, this evidence was material to both guilt and punishment irrespective of good faith or bad faith of the prosecution.

There are three situations in which Brady claims might arise despite defendant's failure to request favorable evidence: (1) Where previously undisclosed evidence revealed that prosecution introduced trial testimony that it knew or should have known was perjured, (2) where government failed to accede to defenses request for disclosure of some specific kind of exculpatory evidence, (3) where government failed to volunteer exculpatory evidence never requested or requested only in general way, if suppression of evidence would be sufficient significance to result in denial of defendant's right to fair trial. U.S.C.A. Const. Amends. 5,6,14.

Applicant believes because of the probative value of the hair samples, testing should have been done and their results should have been available at the time of his jury trial, he also believes that the unavailability of this material evidence is not due to any fault of himself or of his trial Attorney James Keegan, and the results of its testing could be newly discovered evidence in his behalf.

Chain of custody is also in question concerning these hair sampling, questions as to who removed the hair samples from the accident scene, who took hair from the body of the deceased, who tested the samples and to whom were they delivered? In their direct examination by Asst. District Attorney Hon the following transpired. (RR Vol 5, pg. 37, lines 8-15) Line 8, to Mr. Andrew McWhorter of the DNA Section of the Texas Department of Public Safety's crime lab, Harris County Texas. ("one question came up yesterday, I think during one of your cohorts testimony as to why the hair specimens had not been tested to date. Are you aware of that?") Line 11.(Mr. McWhorter replies):

-5-

("Yeah, I know they have not been tested.") (RR Vol 4, pg. 162, lines 8-20). (Mr. Hon to Valerie Huebner, forensic scientist, Texas Department of Public Safety's crime lab Harris County). Lines 15-16, ("I did not test hair from the scalp of the victim.") (Line 17. Mr. Hon). ("Let me ask you this, why would the hair samples not have been tested?") (Line 19. Mrs. Huebner replies). ("That's trace evidence, it was forwarded to trace, but it hadn't been completed by this time.") By the time of Applicant's Jury Trial.

(RR Vol 3, pg. 36, line 10) Applicant noticed burns on victims lips and fingers. (Line 7). He also noticed bruises all over the victims body.

(RR Vol 3, pg. 259, lines 10-14)(Defense Attorney James Keegan questions Detective Allen). ("Ma'am did you save hair samples that were found in truck?") (Allen replies). ("It went to the DPS crime lab.") (Keegan). ("Do you have the results here today?") (Allen replies). ("I do not.")

On February 16th 2009, Andrew McWhorter, Tonya Dean, Valerie Huebner and Pamela Mikulcik arrived at the crime scene. McWhorter collected hair samples from scene.

(RR Vol 5, pg.25, line 14 McWhorter states). ("We generally collect hair samples.") (RR Vol 5, pg. 25-26, lines 24-3, McWhorter states). ("They package the DNA samples and took them to their office in Houston on February 17,2009.") ("On February 27th, 2009 several specimens were received from the medical examiners office.")

(RR Vol 4, pg. 33, lines 4-8) Merrill Hines replies. ("I did not document on my diagrams areas of hair loss on the scalp.") (This would have been sig-nificant testimony) even if testing had or had not been completed.

(RR Vol 4, pg. 168, lines 4-8) No traces of blood found on hair samples taken from truck.

(RR Vol 4, pg. 169, lines 18-25). Hair samples were taken from hole in wall and forwarded to the Trace Department of the TDPS crime lab along with other samples.

6 OF 10

The provisions of Tex. Code Crim. Proc. Art. 64.01 (a)(1)(B)(Vernons)2001 states: (B) Through no fault of the convicted person, for reasons that are of a nature such that the interests of justice requires DNA testing.

Applicant cannot forsee the fact that this mitigating impeachment evidence collected at the scene of an alleged murder has went untested. At some point in time the experts representing the State of Texas knew or should have known that withholding evidence that could be favorable to the Applicant violated his rights under Article One, Sections 10, 15 and 19 of the State Constitution as well as the 5th.,6th., and 14th., Amends. of the United States Constitution.

## CONCLUSION

The State of Texas alleges that the victim, the deceased in this cause experienced hair loss by being pulled, dragged or during a struggle, the Applicant and only witness to this accident certify that the deceased hair appeared to have been burned as well as her lips, fingers, and a bed mattress , this cannot be looked at as though a vacuum, there are overwhelming facts that may be proven through the releasing of these hair samples for DNA testing, or the releasing of the results of the specimens which may have already been tested when considering the facts that these State experts and their testimonies as to hair lost of the deceased where contributing factors of the Applicant's jury verdict. Applicant believes that he is entitled to the production of this material exculpatory evidence and to have it tested pursuant to Article 64.01 Code of Crim. Proc., enacted as Senate Bill 3 effective April 5, 2001. Applicant has submitted the following facts in support of his motion for forensic DNA testing: (1) that forensic DNA hair samples were taken, but these samples are alleged to have never been tested at any time; (2) Those authorized individuals who obtained the samples were accessible for the Applicant's jury trial, but the DNA hair samples were not; (3) Forensic DNA testing will exclude the State's theory as to how the victim's hair was lost; (4) Applicant has never been

-7-

7-OF-10

allowed the equal protection of the law to have DNA forensic testing proformed.

Finally Applicant seeks a "Live Evidentiary Hearing" to present the facts concerning these issues and collected DNA sample results. Be presented to the Applicant for his defense.

Applicant hereby states that the above facts support his request for Forensic DNA testing of hair samples taken from the scene of the crime and the deceased on February 16, 2009, in which the Applicant's wife was the victim and Applicant was convicted of the felony offense of murder and moves this Honorable Court order such testing in the interests of justice.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Applicant moves this Court order DNA testing as a matter of right. Applicant also Prays this Honorable Court grant a "Live Evidentiary Hearing" on this issue.

Respectfully submitted,

*Del Ray Sanders*

Del Ray Sanders, Applicant, Pro-Se
Wynne Unit #1621331
810 FM 2821
Huntsville, Texas
         77349

## DECLARATION

I, Del Ray Sanders, TDCJ - CID No. 1621331, under title six of the Texas Civil Practice and Remedies Code, Chapter 132 Section 132.003, and being presently incarcerated at the Wynne Unit of TDCJ-CID, declare under penalty of perjury that the foregoing is true to the best of my knowledge.

Respectfully,

*Del Ray Sanders*

EXECUTED ON THIS ___ DAY OF __MARCH__ ,2015.

-9-

9-OF-10

## UNSWORN DECLARATION

I, Del Ray Sanders, TDCJ - CID No. 1621331, an inmate incarcerated at the Wynne Unit located in Walker County, Texas declare and verify that the contents herein are true and correct under the penalty of perjury.

Done on this the 17 day of March , 2015.

_Del Ray Sanders_
Del Ray Sanders, Applicant
Wynne Unit  No.1621331
810 FM 2821
Huntsville, Texas
                77349


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of Applicant's Motion for DNA Testing of DNA Evidence was sent via U.S. Mail, Pre-paid postage, to the following parties:

Kathy Clifton, Clerk
411th Judicial District
101 W. Mill St. Ste.
Livingston, Texas
                77351

_Del Ray Sanders_
Del Ray Sanders

-10-

10-0410

Sincerely,

*Del Sanders* Pro-Se

Del Ray Sanders
TDCJ #1621331
Wynne Unit
810 FM 2821
Huntsville, Texas
77349

FILED FOR RECORD

2015 MR 13  AM 10:28

KATHY E. CLIFTON-DISTRICT CLER
POLK COUNTY, TEXAS

BY_____

Copies sent to:
C.O.A.-Beaumont Texas
C.O.C.A.-Austin Texas
Eastern District Court, Lufkin Texas